**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| PAMELA R. REED,<br><br>      Plaintiff,<br><br>vs.<br><br>CEDAR COUNTY and CEDAR COUNTY SHERIFF DANIEL HANNES,<br><br>      Defendants. | No. C-05-0064-LRR<br><br>**ORDER** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction* . . . . . . . . 4

    *B.  Ripeness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    *C.  Discretion to Withhold Jurisdiction in Declaratory Judgment
        Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*V.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

The matter before the court is Plaintiff Pamela R. Reed's Motion to Dismiss Counterclaim ("Motion") (docket no. 8). After Reed filed a complaint alleging sexual harassment and retaliation in the workplace. Defendants Cedar County and Cedar County Sheriff Daniel Hannes filed a Counterclaim seeking a declaratory judgment authorizing Sheriff Hannes to lawfully end Reed's paid administrative leave and terminate her employment. Defendants resisted the Motion (docket no. 9). Defendants requested oral argument on the Motion in the event the court deems it useful. The court deems it appropriate to decide the Motion based upon the briefs and the information submitted therewith. The matters are, therefore, fully submitted and ready for decision.

## II. PROCEDURAL BACKGROUND

On April 5, 2005, Reed filed a three-count Complaint. She alleges her supervisor, Sheriff Hannes, sexually harassed her between June 28, 2000, and November 2004, while she was working as the Cedar County Jail Administrator. In the three counts, Reed claims sexual discrimination, harassment, retaliation and battery. Reed specifically alleges violations of Title VII (42 U.S.C. § 2000(e), *et seq.*), the Iowa Civil Rights Act (Iowa Code ch. 216) and Iowa common law. Therefore, federal question subject matter jurisdiction exists; 28 U.S.C. §§ 1331 and 1367 vests the court with jurisdiction to review Reed's claims. On April 19, 2005, Defendants jointly filed an Answer and Counterclaim, and, on April 21, 2005, Sheriff Hannes filed a separate Answer. On April 27, 2005, Reed filed the instant Motion. On May 6, 2005, Defendants filed a Resistance to the Motion.

## III. FACTUAL BACKGROUND

On June 28, 2000, Sheriff Hannes hired Reed as a Cedar County jailer. On July 31, 2000, Sheriff Hannes appointed Reed the Cedar County Jail Administrator.

Reed alleges that, throughout her employment, Sheriff Hannes subjected her to sexual comments and unwelcome sexual advances. Reed claims that she complained to Sheriff Hannes and other law enforcement officials about the harassment, but it did not stop and Sheriff Hannes ignored her requests. More specifically, Reed alleges that, on February 6, 2004, she complained to Sheriff Hannes about the sexual harassment, and he then became critical of her work. She contends he only became critical and retaliated because she complained.

Defendants claim that Sheriff Hannes and Reed engaged in mutually welcome flirtation and playfulness and that they engaged in "banter of a sexual nature" in the workplace. Defendants claim that Reed was sexually provocative toward Sheriff Hannes and her other male co-workers and that Reed solicited sexual relations from Sheriff Hannes when they attended Jail School in February 2001. Defendants claim that, on February 6, 2004, Sheriff Hannes and other persons of authority first learned that Reed did not welcome Sheriff Hannes's comments and flirtations. Defendants claim that Sheriff Hannes learned of Reed's complaints and immediately stopped behaving in the ways that offended Reed. Defendants further allege that Reed was provided with copies of Cedar County's sexual harassment polices and that she attended a mandatory training session regarding sexual harassment in the workplace.

On July 27, 2004, Reed filed a complaint with the Iowa Civil Rights Commission ("ICRC") and cross-filed it with the Equal Employment Opportunity Commission ("EEOC"). On October 28, 2004, Reed and Sheriff Hannes, through their attorneys, signed a stipulation that Reed would be placed on paid administrative leave due to her complaints. The stipulation outlines the facts that Reed filed claims with the ICRC and the EEOC and that those claims alleged sexual harassment and retaliation against Defendants. The parties agreed that it was in the "best interests of all involved" to keep the complaints

and the situation surrounding the complaints out of the workplace. The parties further stipulated that Reed would be placed on administrative leave with "full pay and with full benefits (including retirement and medical benefits)" during the pendency of any litigation that resulted from filing the ICRC and EEOC complaints. The stipulation provides that Reed would remain on administrative leave until the anticipated litigation was "mutually resolved, compromised, settled or until such litigation [is] finally decided by the Courts having jurisdiction."

Reed remains on paid administrative leave at this time.

## IV. LEGAL ANALYSIS

### A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Reed moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Defendants' Counterclaim for lack of subject matter jurisdiction. Specifically, Reed argues Defendants' Counterclaim is not ripe. *See Dakota, Minn. & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 520 (8th Cir. 2004) ("The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction."). Rule 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion prior to answering the complaint filed in any action.

The Eighth Circuit Court of Appeals articulated that a "court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Where a party launches a "facial attack" on federal subject matter jurisdiction under Rule 12(b)(1), the court looks only to the face of the pleadings to determine whether federal subject matter jurisdiction exists and the nonmoving party is entitled to the same protections as it otherwise would receive

4

against a motion brought under Rule 12(b)(6). *Id.* at 729 n.6 (citing *Menchaca*, 613 F.2d at 511; *Mortensen*, 549 F.2d at 891; and *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). That is, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

Conversely, when a party launches a "factual attack" on federal subject matter jurisdiction, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Id.* at 593 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). In a "factual attack," the nonmoving party is not entitled to the benefit of the safeguards that are afforded to a nonmoving party in a motion brought under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6 (citing *Mortensen*, 549 F.2d at 891). The proper course under these circumstances is for the moving party to request an evidentiary hearing on the issue of the court's jurisdiction, at which, if necessary, witnesses may testify. *Id.* at 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

In this case, Reed's challenge to the court's subject matter jurisdiction is solely based on information alleged in Defendants' Answer and Counterclaim. Thus, Reed's attack on federal subject matter jurisdiction is a "facial attack," and the court will consider only the allegations that are contained in the pleadings when it addresses Reed's Motion.

### *B. Ripeness*

Relief is available under the Declaratory Judgment Act ("the Act"), 28 U.S.C. §§ 2201 and 2202, if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Act's "case of actual

5

controversy" requirement is coterminous with the constitution's Article III "case or controversy" requirement. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937). This is so, because "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *United Pub. Workers of Am. (CIO) v. Mitchell*, 330 U.S. 75, 89 (1947). "A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Wyatt V.I., Inc.*, 385 F.3d 801, 806 (3d Cir. 2004) (citations and quotations omitted).

The doctrine of ripeness requires: "(1) a sufficiently concrete case or controversy within the meaning of Article III of the Constitution, and also, (2) prudential considerations must justify the present exercise of judicial power." *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996) (citations and quotations omitted). "'A live dispute must exist between the parties at the time of the court's hearing.'" *Id.* (quoting *Caldwell v. Gurley Ref. Co.*, 755 F.2d 645, 649 (8th Cir. 1985)). However, "a plaintiff does not have to 'await consummation of threatened injury' before bringing a declaratory judgment action." *S.D. Mining Ass'n v. Lawrence County*, 155 F.3d 1005, 1008 (8th Cir. 1998) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "Instead, an action is ripe for adjudication if the plaintiff faces injury that 'is certainly impending.'" *Id.* (quoting *Babbitt*, 442 U.S. at 298); *see also Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 933 (8th Cir. 2005) (upholding district court's refusal to issue an advisory opinion and holding water supply district's claim for declaratory judgment was not ripe because the injury facing the water district was not "certainly impending" where the water district sought a declaration which turned on the outcome of a pending state lawsuit).

The Counterclaim is not ripe because Defendants' proposed action of terminating Reed is not a certainty and, therefore, injury to Defendants based on the decision to terminate Reed is not "certainly impending." *S.D. Mining Ass'n*, 155 F.3d at 1008. The court finds that the threatened harm (i.e., a potential claim by Reed for retaliatory discharge and additional damages) asserted by Defendants is not "mature[] enough to warrant judicial intervention." *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958 (8th Cir. 2001). The court cannot advise Defendants as to the legality of a proposed personnel action. Such advice would be tantamount to an advisory opinion.

Defendants argue that, "were Sheriff Hannes to terminate [Reed] . . . after this suit concluded, [Reed] might then claim" retaliatory discharge and additional damages. This argument fails for two reasons. First, Reed has already sued Defendants and any additional claim would be intimately related to the suit Defendants are already required to defend. There would be few, if any, factual issues to investigate. Second, Defendants' prediction that Reed "might" sue for retaliatory discharge does not equate to an "impending certainty" that Reed will proceed with an additional claim and that Defendants will be harmed. The court concludes that the Counterclaim does not present "a sufficiently concrete case or controversy" to proceed.

Subject matter jurisdiction is not proper in Defendants' Counterclaim because jurisdiction is proper only where a court can provide "specific relief through a decree of a conclusive character." *Aetna*, 300 U.S. at 241. If this court exercised jurisdiction and subsequently ruled on the Counterclaim for declaratory relief, the resulting decree would only impact Reed's potential claim for retaliatory discharge; it would not conclusively resolve the dispute between the parties because Reed's current claims and Defendants' affirmative defenses would be left undisturbed. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 2759 (3d ed. 1998)

7

("One of the most important considerations that may induce a court to deny declaratory relief is that the judgment sought would not settle the controversy between the parties."). In light of the pending claims in Counts I, II, and III, it is clear that not all of Reed's claims against Defendants would be resolved by resolution of the Counterclaim. Furthermore, many key issues involved in a potential retaliatory discharge claim are clearly relevant to the other three counts. In particular, Defendants may well take the position that terminating Reed was not based on a retaliatory or discriminatory basis. Whether such defense is pretextual would be an issue in Reed's claims for discrimination, harassment and retaliation. Because any declaratory judgment issued by this court would not be of a "conclusive character," subject matter jurisdiction does not exist over the Counterclaim.

The court finds the Counterclaim is not ripe for adjudication. Therefore, Plaintiff's Motion shall be granted and the Counterclaim shall be dismissed.

### C. *Discretion to Withhold Jurisdiction in Declaratory Judgment Action*

Even if Defendants' Counterclaim were ripe and the court had subject matter jurisdiction, it would decline Defendants' invitation to exercise that jurisdiction and become involved in personnel matters in the workplace. It would withhold jurisdiction pursuant to the discretion vested in it by Congress pursuant to the Act.

The Act grants a district court discretion as to whether to exercise or withhold jurisdiction. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 n.17 (1993) ("As we have noted, the Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established."); *Green v. Mansour*, 474 U.S. 64, 72 (1985) ("[W]e have also held that the declaratory judgment statute 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'") (citing *Pub. Serv. Comm'n of Utah*

*v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). The Act itself states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201 (emphasis added).

Courts have recognized several tests and considerations in determining whether to exercise the broad discretion granted by the Act. The Eighth Circuit Court of Appeals has stated:

> In determining whether or not declaratory relief would be proper in any given situation the courts have frequently followed the [following] guidelines . . . 'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.'

*Alsager v. Dist. Court of Polk County, Iowa (Juvenile Div.)*, 518 F.2d 1160, 1163-64 (8th Cir. 1975) (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)); *accord Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969) (citing the same two factors as the *Alsager* court). Other Circuit Courts of Appeals have relied upon the Supreme Court's decision in *Green v. Mansour*, 474 U.S. 64 (1985), to articulate five factors a district court should consider when determining whether to exercise its discretion and render declaratory judgment. The factors include:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of

> 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and (5) whether there is an alternative remedy that is better or more effective.

*Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991) (internal quotations omitted); *see also NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (articulating the same five factors as the Sixth Circuit Court of Appeals and citing *Green* and *Nationwide*).

After reviewing this matter in light of the guidance provided by these binding and non-binding authorities, the court concludes that, even if subject matter jurisdiction were proper, it would decline to exercise jurisdiction over the Counterclaim. The court finds that ruling on the Counterclaim would not "clarify or settle" the legal dispute between the parties and it would not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager*, 518 F.2d at 1163-64.

The court notes that the parties were unable to cite and the court is unable to find a single precedent addressing the applicability of the Act to this kind of dispute. Most actions under the Act arise in the context of insurance contract disputes, intellectual property disputes and disputes over the constitutionality of a particular law. *See e.g.*, *Aetna Life*, 300 U.S. at 242-44 (finding an "actual controversy" within the meaning of the Act where there was a dispute between an insurer and its insured over the extent of the insurer's coverage); *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 378 (8th Cir. 1992) (explaining that there is generally an "actual controversy" for purposes of the Act where a defendant holding a copyright has either expressly or impliedly charged the plaintiff with infringement); *Mattis v. Schnarr*, 502 F.2d 588, 595 (8th Cir. 1974) (finding an "actual controversy" under the Act where a

father sought a declaratory judgment regarding the constitutionality of a state statute which authorized police officers' actions of shooting and killing his son).

Allowing the Counterclaim to proceed would encourage pre-emptive legal action by employers against disgruntled employees, potentially undercutting Congress's very clear direction that such disputes first be addressed through the administrative process. *See Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (discussing how a complainant must exhaust administrative remedies before filing a federal employment action). This may be one of the reasons federal courts have not found jurisdiction in employment disputes under the Act as Defendants ask the court to do. Defendants are asking this court to place its imprimatur upon a proposed employment action, but the court cannot accept this role as a personnel advisor to cautious employers. Therefore, even if the court had subject matter jurisdiction, it would decline to exercise it.

## V. CONCLUSION

For the foregoing reasons, Reed's Motion shall be granted and Defendants' Counterclaim shall be dismissed. Dismissal for lack of jurisdiction due to a lack of ripeness is not an adjudication on the merits and, thus, the case must be dismissed without prejudice. *Mo. Soybean Ass'n v. U.S. Envtl. Prot. Agency*, 289 F.3d 509, 513 (8th Cir. 2002).

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Plaintiff Pamela R. Reed's Motion to Dismiss Counterclaim (docket no. 8) is **GRANTED**;

(2) Defendants' Counterclaim is dismissed without prejudice; and

(3) The parties are encouraged to explore settlement by contacting Chief Magistrate Judge John A. Jarvey to set up a mediation session.

**IT IS SO ORDERED.**

**DATED** this 3rd day of November, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA