## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

PAMELA R. REED,

       Plaintiff,

vs.

CEDAR COUNTY and CEDAR
COUNTY SHERIFF DANIEL
HANNES,

       Defendants.

No. 05-CV-64-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*   *THE FIRST MOTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
      *A.*    *Failure to Comply with the Local Rules* . . . . . . . . . . . . . . . . . . . . **3**
      *B.*    *Melissa Streeter's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      *C.*    *Toni Duncan's Journal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*IV.*   *THE SECOND MOTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      *A.*    *Tape Recordings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
           *1.*    *July 16, 2004 tape recording and transcript* . . . . . . . . . . . . **6**
           *2.*    *July 19, 2004 tape recording and transcript* . . . . . . . . . . . . **7**
                *a.*    **In pari delicto** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
                *b.*    *The* **Cole v. Taylor** *doctrine* . . . . . . . . . . . . . . . . . . **9**
                *c.*    *Admissibility of the Transcript* . . . . . . . . . . . . . . . . **10**
                *d.*    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
           *3.*    *Dennis Weih tape recording* . . . . . . . . . . . . . . . . . . . . . . . **11**
      *B.*    *Ronnye Weiland* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
      *C.*    *Reputation Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      *D.*    *Testimony Regarding Reed's Professionalism and Experience* . . . . **14**
      *E.*    *Post-Administrative Leave Evidence* . . . . . . . . . . . . . . . . . . . . . . **15**

*V.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

## I. INTRODUCTION

The matters before the court are Plaintiff Pamela R. Reed's Motion in Limine ("First Motion") (docket no. 76), and Defendant Cedar County and Defendant Cedar County Sheriff Daniel Hannes's Motion in Limine ("Second Motion") (docket no. 78).

## II. RELEVANT PROCEDURAL BACKGROUND

On April 5, 2005, Plaintiff Pamela R. Reed ("Reed") filed a three-count Complaint against Defendant Cedar County, Iowa ("Cedar County"), and Defendant Cedar County Sheriff Daniel Hannes ("Sheriff Hannes"), in his individual and official capacities. Reed alleges sexual harassment, hostile work environment, retaliation and battery.

On January 18, 2007, Reed filed the First Motion. On January 22, 2007, Defendants filed a response to the First Motion ("Response").

On January 20, 2007, Defendants filed the Second Motion. On January 30, 2007, Reed filed a resistance to the Second Motion ("Resistance"). A brief accompanied Reed's Resistance.

On January 29, 2007, the court ordered the parties to file briefs by noon on January 31, 2007. It ordered Reed to file a brief in support of the First Motion, and it ordered Defendants to file a brief in support of the Second Motion and the Response. On January 30, 2007, Reed filed a brief in support of the First Motion. On January 31, 2007, Defendants filed a brief in support of the Second Motion. To date, Defendants have not filed a brief in support of their Response. *See* LR 7.1.e ("Each party resisting a motion must, within 14 days after the motion is served, file a brief containing a statement of the grounds for resisting the motion and citations to the authorities upon which the resisting party relies.").

On February 1, 2007, the parties appeared before the court for the Final Pretrial Conference ("FPTC") and presented brief oral arguments on the First Motion and the Second Motion. Attorney Dorothy A. O'Brien appeared on behalf of Reed. Attorney

2

Carlton G. Salmons appeared on behalf of Cedar County and Sheriff Hannes, in his official capacity. Attorney John P. Roehrick appeared on behalf of Sheriff Hannes, in his individual capacity.

In ruling on the First Motion and the Second Motion, the court assumes that the offering party is able to satisfy foundation requirements and the other Federal Rules of Evidence for admissibility of the evidence. The rulings in this order only address the specific evidentiary issues raised by the parties.

### III. THE FIRST MOTION

In the First Motion, Reed seeks to exclude two types of evidence: (1) the testimony of a former Assistant Jail Administrator, Melissa Streeter, and (2) former Assistant Jail Administrator Toni Duncan's written journal.

In Defendants' Response, which is two pages long, Defendants agree that they will not seek to admit some of Streeter's testimony.

### A. Failure to Comply with the Local Rules

As noted above, Defendants failed to file a brief in support of their Response, in violation of the Local Rules. *See* LR 7.1.e. As such, the court could grant the First Motion based on Defendants' failure to comply with the Local Rules. Local Rule 1.1 provides, in part:

> A failure to comply with the Local Rules may be sanctioned by the court in any appropriate manner. Sanctions may include, but are not limited to, the exclusion of evidence, the prevention of witnesses from testifying, the striking of pleadings or other filings, the denial of oral argument, and the imposition of attorney fees and costs.

LR 1.1.f. The court has repeatedly instructed Defendants to comply with the court's rules. *See* Order (docket no. 83) (requiring both parties to comply with the Local Rules by filing briefs in support of their motions and resistances); Order (docket no. 86) (reminding Defendants to file documents under seal, in compliance with Federal Rule of Evidence

3

412(c)(2)).  Even after specifically ordered to file a brief in support of its Response, Defendants failed to do so.  Rather than strike Defendants' Response and grant as unresisted Reed's First Motion, the court elects to review the merits of the evidentiary issues raised by Reed.  Nonetheless, further disregard of the Local Rules or the court's orders will result in sanctions.

### B.  Melissa Streeter's Testimony

Reed seeks to exclude Streeter's testimony.  Streeter is expected to testify about the fact that Reed discussed "personal details relating to her relationship" with Tom Reed, who is Reed's husband.  Specifically, Streeter is expected to testify that (1) Reed discussed Tom Reed's sex life in front of other jail employees, (2) she was afraid of Reed, (3) she was not insulted or threatened by Sheriff Hannes's jokes, (4) Reed never complained to her about the sexual comments that Sheriff Hannes directed to Reed, (5) Reed was flattered by the comments Sheriff Hannes made to her and she encouraged the comments, (6) Reed joked about hoping she and Sheriff Hannes would have adjoining rooms at the jail school and (7) the flirtation between Sheriff Hannes and Reed was mutual.

Reed argues that, if Streeter testifies to these irrelevant accusations, Reed will be forced to delve into the fact that she had to counsel Streeter about her time-card reporting and Reed will offer seven additional exhibits into evidence regarding the time-card discrepancies.  Reed seeks to exclude Streeter's testimony because it is "irrelevant."

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Generally, relevant evidence is admissible at trial.  *See* Fed. R. Evid. 402.  However, relevant evidence may be excluded under Federal Rule of Evidence 403 if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

4

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Count I of Reed's Complaint contains a hostile work environment sexual harassment allegation. To prove a claim of harassment, Reed will have to prove, in part, that Sheriff Hannes's conduct toward her was unwelcome. *See Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 910 (8th Cir. 2006) (setting forth the five elements of a hostile work environment claim, including the requirement that the plaintiff "was subjected to unwelcome harassment"). Streeter's proposed testimony has a tendency to make it more probable that Sheriff Hannes's conduct was welcome, rather than unwelcome. The court is not convinced that this relevant evidence should be excluded under Rule 403.

The First Motion shall be denied as to Streeter's testimony. Due to Defendants' concession, however, Streeter shall not testify about her feelings that Reed is "unethical, vindictive, self-centered, cared only about herself, [and] was two-faced." Additionally, Streeter will not testify about the fact that she did not agree with the way Reed lived her personal life. Finally, due to additional concessions by Defendants, testimony from Streeter about Reed playing tape recordings of disciplinary sessions outside of the workplace shall not be permitted.

### *C. Toni Duncan's Journal*

The second portion of the First Motion concerns Duncan's journal. Reed argues that "[t]he journal is irrelevant, hearsay, lacks foundation and should be excluded from evidence." Defendants respond that the "journal will be properly identified and authenticated" and that "[a]ny and all hearsay . . . will be redacted."

The court finds that the majority of Duncan's journal entries are irrelevant. Fed. R. Evid. 401, 402 & 403. Moreover, the journal entries are inadmissible hearsay. *See* Fed. R. Evid. 801 (providing that hearsay is an out-of-court statement that is offered for the truth of the matter asserted); Fed. R. Evid. 802 (providing that hearsay is

5

inadmissible). Even though the journal contains information that may fall within an exception to the hearsay rule if Duncan were to testify, the journal itself is hearsay. Defendants have not cited to any hearsay exception, therefore, the court concludes that the journal must be excluded pursuant to Rule 802. The First Motion shall be granted in this regard.

## IV. THE SECOND MOTION

In the Second Motion, Defendants argue that the following evidence should be excluded: (1) two tape recordings from July of 2004 and the corresponding transcripts, (2) the testimony of Ronnye Weiland, (3) the testimony of Tom Reed, Shirley Lindsey, Jennifer Cooper and Amanda Jeddeloh-Flory regarding Reed's reputation, (4) the testimony of ten witnesses regarding Reed's professionalism and jail administration experience and (5) the testimony of four witnesses regarding the atmosphere at the Cedar County Jail following Reed's placement on paid administrative leave. The court will examine, in turn, each evidentiary issue.

### A. Tape Recordings

#### 1. July 16, 2004 tape recording and transcript

Defendants argue that Reed should be barred from introducing the July 16, 2004 tape recording and transcript (Plaintiff's Trial Exhibit 26) into evidence because, Reed cannot establish a foundation for the evidence and because she secretly tape-recorded Sheriff Hannes's admissions.[1] At oral argument, Reed's attorney clarified that Reed

---

[1] For purposes of ruling on Defendants' summary judgment motions, the court found the following facts:

> In late June or early July of 2004, Reed sought out legal advice from attorney Leanne Tyler. On July 12, 2004, Reed and Tom Reed met Tyler for the first time. Tyler advised Reed to tape record Sheriff Hannes to obtain evidence about the masturbation incident at the February 2001 Jail School. About

(continued…)

6

would not be offering the July 16, 2004 tape or transcript into evidence. Therefore, the Second Motion shall be granted and Reed's Trial Exhibit 26 shall be excluded.

### 2. *July 19, 2004 tape recording and transcript*

Defendants argue that the July 19, 2004 tape recording and transcript (Reed's Trial Exhibit 21, hereinafter referred to as the "Tape" and the "Transcript") should be excluded from evidence. Defendants argue that the Tape and Transcript are inadmissible, because Reed took the advice of her former attorney, Leanne Tyler, and recorded her conversation with Sheriff Hannes. Defendants rely on the *in pari delicto* doctrine. Alternatively, Defendants argue that Reed is barred from using the Tape under the doctrine of *Cole v. Taylor*, 301 N.W.2d 766 (Iowa 1992). The court will address, in turn, Defendants' arguments.

#### a. **In pari delicto**

"The doctrine of *in pari delicto* is the 'principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (quoting Black's Law Dictionary 806 (8th ed. 2004)). "The culpability element of the [*in pari delicto*] doctrine requires that a plaintiff has been guilty of illegal or fraudulent conduct." *Gen. Car &*

---

[1](…continued)

> one week prior to July 16, 2004, Reed decided that she would attempt to tape record Sheriff Hannes's statements. On Friday, July 16, 2004, Reed placed a digital tape recorder in her shirt pocket and attempted to tape record Sheriff Hannes while they stood and talked in a parking lot. She was unsuccessful. Reed then purchased another tape recorder. She wired it to her desk and, on Monday, July 19, 2004, she succeeded in secretly tape recording a conversation with Sheriff Hannes. On July 21, 2004, Reed delivered the tape to Tyler who then entered into a fee contract to represent Reed.

*Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996). "The purpose of the [*in pari delicto*] doctrine is to defer future misconduct by denying relief to one whose losses were substantially caused by his own fraud or illegal conduct." *Id.*; *cf. Pinter v. Dahl*, 486 U.S. 622, 633-34 (1988) (discussing the "equitable defense of *in pari delicto*" in a federal securities case).

To determine whether the *in pari delicto* doctrine bars admission of the Tape, the court must determine whether Reed engaged in illegal or fraudulent conduct. *See Gen. Car & Truck Leasing Sys.*, 557 N.W.2d at 279. Iowa Code § 727.8 prohibits electronic and mechanical eavesdropping. That is, it criminalizes the act of using a tape recorder to tape a conversation between others. *See State v. Philpott*, 702 N.W.2d 500, 502-04 (Iowa 2005) (per curium) (affirming conviction under Iowa Code § 727.8 where a person tape-recorded her co-workers' conversations while she was not present). When the recorder is "openly present and participating in or listening to a communication[,]" the recording of that communication is not prohibited. Iowa Code § 727.8; *see also State v. Reid*, 394 N.W.2d 399, 405 (Iowa 1986) (explaining that there is no violation of Iowa Code § 727.8 when a child victim participates in a telephone conversation and consents to it being recorded, and noting that "consent of all conversing parties is not required"). Likewise, federal law prohibits wiretaps, *see* 18 U.S.C. § 2511(1), but there is no violation of federal law when a communication is recorded by a person who is involved in the communication. *See* 18 U.S.C. § 2511(2)(c) & (2)(d); *see also Osborn v. United States*, 385 U.S. 323, 327-31 (1966) (holding that a tape-recorded conversation based on surreptitious surveillance was properly admitted into evidence). Therefore, when Reed recorded her conversations with Sheriff Hannes, she did not violate Iowa or federal law.

The court also cannot conclude that Reed acted fraudulently. Iowa attorneys are prohibited from tape recording witnesses without their consent or knowledge. *See* 8 Iowa Practice Series Civil Litigation Handbook § 39:8 Practice Warning (2006 ed.) ("It is

8

unethical for a lawyer to record any conversation without the express consent of the parties to that conversation even though doing so would not violate state or federal wiretap laws."); *see also Iowa Supreme Court Bd. Of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215 (Iowa 1996) (publicly reprimanding attorney for secretly recording an in-chambers conversation with another attorney who was a part-time judge); *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Mollman*, 488 N.W.2d 168 (Iowa 1992) (suspending a lawyer's license for thirty days for surreptitiously recording a conversation). Here, Tyler did not record anything. Moreover, Reed is not an attorney and her act of making the Tape was not a fraudulent act.

Defendants cannot show that Reed committed an illegal or fraudulent act. The Tape shall not be excluded under the *in pari delicto* doctrine.[2]

### b. *The* Cole v. Taylor *doctrine*

Defendants alternatively seek to exclude the Tape by relying on the following public policy rule: "[A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or to maintain a claim for damages based on his own wrong or caused by his own neglect . . . ." *Anderson v. Miller*, 559 N.W.2d 29, 34 (Iowa 1997) (quotations omitted). Defendants cite *Cole v. Taylor*, 301 N.W.2d 766, 767 (Iowa 1981), which held, on public policy grounds, that a convicted murderer could not use her criminal

---

[2] The court finds that Defendants' reliance on *Troendle v. Hanson*, 570 N.W.2d 753 (Iowa 1997), is misplaced. *Troendle* stands for the proposition that a litigant is bound by the actions of its attorney during the course of litigation. *See Troendle*, 570 N.W.2d at 756 (citing the Iowa rule that "the sins of the attorney may be visited upon the client" and refusing to abandon the rule because it "is a well-established principle of agency law"). Here, there was no attorney-client relationship between Reed and Tyler when the latter gave the former advice about recording the conversation. *Cf. id.* (citing *State v. LaMar*, 224 N.W.2d 252, 254 (Iowa 1974), for the proposition that "[i]t is the general rule that a client is bound by the acts of his attorney within the scope of the latter's authority"). Therefore, the rule discussed in *Troendle* is inapposite.

acts as an element of recovery in a suit against her psychiatrist where she alleged the psychiatrist negligently failed to prevent her from killing her ex-husband. The court is not convinced that Reed acted illegally or immorally when she took an attorney's advice and recorded her conversations with Sheriff Hannes. Iowa's public policy rule is inapplicable.

The Tape shall not be excluded under the *Cole v. Taylor* doctrine.

### c.    *Admissibility of the Transcript*

The Transcript is not admissible, unless the parties stipulate to its accuracy and admissibility. *See United States v. Frazier*, 280 F.3d 835, 849-50 (8th Cir. 2002) (approving of the district court's decision to "permit the use of transcripts to aid the jury in listening to tape-recorded conversations" where the district court gave a limiting instruction which, in part, instructed the jury that "if it found any variance between the recordings and the transcript, the recordings controlled"). Therefore, the Transcript may only be used during trial if it is accurate and, even then, it can only be used for the limited purpose of helping the jurors follow the taped conversation and keep track of the speakers as they listen to the Tape. *Id.*; *see also United States v. McMillan*, 508 F.2d 101, 105 (8th Cir. 1974) ("If accuracy [of the transcript] remains at issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents.").

### d.    *Conclusion*

The Tape shall not be excluded from trial evidence based on the arguments that Defendants advanced.[3] The Transcript shall not be admitted into evidence, absent a stipulation by the parties.

---

[3] As previously stated, Defendants shall be permitted to raise their foundation objection to the Tape during trial.

10

### 3. *Dennis Weih tape recording*

Defendants seek to exclude an audio tape of a telephone conversation between Cedar County Supervisor Dennis Weih and Reed, which took place in July of 2004 (Reed's Trial Exhibit 24, hereinafter referred to as the "Weih Tape"). Defendants argue that the conversation on the Weih Tape is irrelevant and "would lead to confusion of the issues, waste of time and provide no material facts."

Reed responds that the Weih Tape is relevant to her claim for damages for retaliatory litigation. She claims that the Weih Tape will show that the federal counterclaim and state lawsuit were "malicious and unfounded."

On February 8, 2007, the court granted Defendants' motion for summary judgment on Reed's retaliatory litigation claims. *See* Order (docket no. 96). Although the Supreme Court has recently determine that "[t]he scope of the anti retaliation provision [of Title VII] extends beyond the workplace-related or employment-related retaliatory acts and harm[,]" *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006), Reed failed to amend her Complaint to allege such acts as part of her retaliation claim. As such, the court dismissed her retaliatory litigation claims. Because Reed is only seeking to admit the Weih Tape in support of the dismissed claims, it shall be excluded.

As to the Weih Tape, the Second Motion shall be granted.

### B. *Ronnye Weiland*

Defendants argue that the testimony of Ronnye Weiland, ARNP, should be excluded for three reasons: (1) Reed did not disclose the existence of Weiland until after the close of discovery, (2) Weiland's proposed testimony is expert testimony, and (3) alternatively, Weiland's testimony is irrelevant and immaterial.

Reed responds that Weiland is expected to testify as a "medical provider/treater, not expert" and, therefore, should be allowed to testify.

11

On September 21, 2006, Defendants filed a motion to strike Reed's supplemental interrogatory answers designating experts ("Motion to Strike"). *See* Motion to Strike (docket no. 59). In the Motion to Strike, Defendants sought to strike interrogatories wherein Reed first identified Weiland as a witness. On October 26, 2006, Chief Magistrate Judge John A. Jarvey denied the motion and stated:

> The resistance shows that these witnesses are not experts but fact witnesses who can testify to [Reed's] diagnosis, care and treatment. They were not "retained or specially employed to provide expert testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B). Their testimony should, however, be limited to the factual matters concerning their observations, diagnosis, care and treatment of [Reed].

Order (docket no. 67). Therefore, insofar as Defendants argue that Weiland should be excluded as an expert witness, their argument is untimely. The court already ruled that Weiland is not an expert in this case, and it shall not disturb the prior ruling because neither party has presented evidence showing that the prior decision is "clearly erroneous and works manifest injustice." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986); *see id.* at 1440-41 (discussing the discretionary "law of the case doctrine").

Additionally, the court shall not strike Weiland's testimony due to untimely disclosure. Because Defendants have not shown how they have been prejudiced by learning about Weiland for the first time in September of 2006, Weiland shall be allowed to testify as a fact witness. As to Weiland, the Second Motion shall be denied.

### C.  Reputation Testimony

Defendants argue that three of Reed's four proposed "reputation" witnesses should not be allowed to testify regarding Reed's reputation because she cannot meet the foundational requirements. They argue that the testimony of Shirley Lindsey, Jennifer Cooper and Amanda Jeddeloh-Flory should be excluded.

12

Reed responds that her reputation was harmed by the "defamatory statements" made by Sheriff Hannes and, due to the nature of the allegations, she suffered defamation per se. Reed argues that all of her named witnesses should be permitted to testify about her reputation because they frequently visit Tipton, Iowa.

Reed has not cited any cases in support of the proposition that damages are available under Title VII or the ICRA for allegedly defamatory statements. Instead, she cites Iowa Civil Jury Instruction 2100.7, the model jury instruction for damages for "Libel (Slander)," in support of her argument.[4] There is no claim for defamation in the Complaint and the time for amending the Complaint has expired.

Reed may be able to recover damages for harm to her reputation, but not under the defamation label. The Eighth Circuit Court of Appeals explained: "Under the Civil Rights Act of 1991, victims of intentional discrimination prohibited by Title VII may recover compensatory damages for 'future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.'" *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 843 (8th Cir. 1998) (quoting 42 U.S.C. § 1981a(b)(3)). Such "nonpecuniary losses" can include damages for a diminished future earning capacity due to damage to Reed's reputation caused by the intentional discrimination. *See Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004) (affirming $500,000 compensatory damages verdict for emotional distress in a Title VII sexual harassment case); *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) (explaining that compensatory damages in a § 1983 action could include damages for "such injuries as impairment of reputation"); *see also* Eighth Circuit Manual of Model Civil Jury Instructions 5.02A (n.8) (2005) (referencing Model Instruction 4.50A (formerly 4.51), which states in Committee Comments: "Actual damages include compensation for out-of-

---

[4] Reed has not cited authority for such damages in her Resistance *or* in the Final Proposed Jury Instructions (docket no. 85), which she refers to in her Resistance.

pocket loss, other monetary losses and for impairment of reputation, personal humiliation, mental anguish and suffering."); *McDonough v. City of Quincy*, 452 F.3d 8, 22 (1st Cir. 2006) (affirming a $300,000 damages award in a Title VII retaliation case where the award comprised mostly emotional distress damages and the employer's actions caused the plaintiff "substantial humiliation and damage to his reputation"). The Seventh Circuit Court of Appeals stated:

> When reputational injury caused by an employer's unlawful discrimination diminishes a plaintiff's future earnings capacity, she cannot be made whole without compensation for the lost future earnings she would have received absent the employer's unlawful activity. Lost future earning capacity is a nonpecuniary injury for which plaintiffs may be compensated under Title VII.

*See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952-53 (7th Cir. 1998).

Therefore, the court concludes that Reed may present evidence showing reputational injury caused by the sexual harassment or retaliation. Although the court seriously doubts that Reed's family members will be able to present the sort of testimony necessary to prove such damages, the court shall not exclude such testimony at this stage of the proceedings.

As to Reed's proposed reputation testimony, the Second Motion shall be denied.

### D. *Testimony Regarding Reed's Professionalism and Experience*

Defendants argue that ten of Reed's proposed witnesses should not be allowed to testify regarding "their experiences with [Reed] as a jail administrator, a former employee and her professionalism." Defendants seek to exclude such testimony pursuant to Federal Rules of Evidence 402 and 403.

Reed responds that evidence of her work performance is relevant and necessary to counter Defendants' claims that she was a bad jail administrator. She further argues that testimony regarding Reed's work performance "bears on the credibility of [Sheriff Hannes] and [Cedar County]."

14

The testimony of Cedar County Jail employees who worked with Reed during her employment with Cedar County is relevant to at least two elements of Reed's hostile work environment claims. *See Green*, 459 F.3d at 910 (requiring plaintiff to show that the perpetrator's conduct was unwelcome and that the victim has a subjective belief that the work environment was hostile); Fed. R. Evid. 401 & 402. After conducting the balancing inquiry required by Federal Rule of Evidence 403, the court concludes that the probative value of the proposed testimony about Reed's professionalism and experience is not substantially outweighed by the dangers listed in the rule. Fed. R. Evid. 403. As to the Cedar County Jail employees, the Second Motion shall be denied.

Defendants' Motion shall be granted as to the individuals who did not work with Reed at the Cedar County Jail. The danger of delay and confusion substantially outweighs the probative value in the proposed testimony from the individuals who worked with Reed prior to June 28, 2000. Fed. R. Evid. 403. Those witnesses shall not be permitted to testify regarding Reed's professionalism and experience.

### E. Post-Administrative Leave Evidence

Defendants argue that Reed should not be permitted to introduce evidence from four witnesses who worked at the Cedar County Jail after Reed took paid administrative leave on October 28, 2004. Pursuant to Federal Rules of Evidence 402 and 403, Defendants argue that the testimony should be excluded.

Reed responds by arguing that evidence from jail staffers who worked for Reed's successor, Orville Randolph, is relevant to her hostile work environment claim for three reasons: (1) to show that Randolph is paid more than she was, (2) to show that Randolph's higher salary is not justified, and (3) because "the testimony could assist the jury in reaching the conclusion that the personnel aspects of jail administration are difficult and that they may take any criticisms of [Reed] with a grain of salt."

15

The atmosphere and working conditions at the Cedar County Jail after October 28, 2004, are only marginally relevant to Reed's claims. Reed may present testimony showing Randolph's higher salary and benefits without presenting testimony about his abilities as an administrator. Such testimony would be a waste of time and confuse the issues. Therefore, it shall be excluded under Rule 403. Accordingly, as to the post-administrative leave evidence, the Second Motion shall be granted in part and denied in part.

## *V. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED**:

(1)     Plaintiff Pamela R. Reed's Motion in Limine (docket no. 76) is **GRANTED IN PART** and **DENIED IN PART**;

(2)     Defendant Cedar County and Defendant Cedar County Sheriff Daniel Hannes' Motion in Limine (docket no. 78) is **GRANTED IN PART** and **DENIED IN PART**; and

(3)     The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this order.

**IT IS SO ORDERED.**

**DATED** this 12th day of February, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

16