IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

PAMELA R. REED,

    Plaintiff,

vs.

CEDAR COUNTY AND CEDAR COUNTY SHERIFF, DANIEL HANNES,

    Defendants.

M. LEANNE TYLER,

    Claimant.

No. C05-0064

ORDER REGARDING ATTORNEY LIEN

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV. RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*V. CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A. Payment for Services Performed.* . . . . . . . . . . . . . . . . . . . . . . 6
    *B. Contingent Fee.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. Summary of Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*VI. ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 25th day of April, 2007, this matter came on for hearing on the Amended Notice of Attorney Lien (docket number 98) filed by M. Leanne Tyler on February 12, 2007. Plaintiff Pamela Reed was present and represented by her attorney, Dorothy O'Brien. Claimant Leanne Tyler was also present and represented by her attorney, Jeffrey S. Bittner.

## II. JURISDICTION

At the commencement of the hearing, the Court raised the issue of whether a magistrate judge has the authority to enter a final ruling on an attorney lien, or whether the issue must be addressed by a district judge. The parties agreed that the matter could be submitted to the undersigned Magistrate Judge on the merits. Accordingly, with the consent of the parties, the Court finds that it has jurisdiction to consider the issues raised by the amended Notice of Attorney Lien, pursuant to 28 U.S.C. § 636(c)(1).

## III. PROCEDURAL HISTORY

On April 5, 2005, Plaintiff Pamela R. Reed filed a complaint (docket number 3) against Cedar County and its Sheriff, alleging sex discrimination, harassment, retaliation, and battery in the workplace. The case was eventually settled and on February 26, 2007, the parties filed a Joint Stipulation of Dismissal (docket number 104). The parties specifically reserved, however, the issue pertaining to an attorney fee lien filed by Leanne Tyler.

> The stipulation of dismissal does not pertain to the attorneys fee lien filed by Leanne Tyler. The parties stipulate that the Court should retain jurisdiction over this case for the purpose of deciding the attorney fee lien.

*See* Joint Stipulation of Dismissal (docket number 104).

On April 7, 2006, Leanne Tyler filed a Notice of Attorney Lien (docket number 25), claiming that Reed owed attorney fees for services rendered by Tyler prior to the filing of the Complaint. Tyler filed amended notices on November 15, 2006, and January

2

30, 2007. (*See* docket numbers 74 and 90.) On February 12, 2007, Tyler filed a third Amended Notice (docket number 98), claiming total fees owed of $22,034.86. As part of the settlement, the Defendants deposited $22,034.86 with the Clerk of Court, pending a resolution of Tyler's claim. (*See* docket numbers 101 and 105.)

## IV. RELEVANT FACTS

In July 2004, Pamela Reed ("Reed") contacted Attorney M. Leanne Tyler ("Tyler") regarding a claim of sexual harassment at her workplace. At that time, Reed was employed as Jail Administrator in Cedar County. Reed claimed that the Sheriff of Cedar County, Daniel Hannes, had made inappropriate comments and had exposed his private parts.[1] After meeting with Reed a couple of times, Tyler agreed to represent her regarding her claim.

On July 21, 2004, Reed and Tyler executed an attorney fee contract (Claimant's Exhibit 1). Tyler testified that it is a standard contract which she commonly employs in discrimination cases. The parties agreed that Tyler would receive a contingent fee equal to 40% of the recovery, including any recovery for attorney fees. According to Tyler, by including attorney fees in the amount used to calculate the contingency fee, both the client and the attorney have "similar interests" regarding possible settlement.

After agreeing to represent Reed, Tyler began preparing the case, including conferring with Reed, collecting evidence, and filing a claim with the Iowa Civil Rights Commission. Both Tyler and Reed testified that once the claim was filed, Reed's work environment continued to deteriorate. Reed's co-workers either refused to speak to her or would make inappropriate comments. Her supervisors were undermining her work decisions. Reed believed that her phone conversations were being monitored and on October 21, 2004, her desk and office were searched while she was not there.

---

[1] Details regarding Reed's allegations may be found in the Court's Order on the Defendants' Motions for Summary Judgment. (*See* Order, docket number 96.)

Tyler testified that during the first part of October 2004, "things were heating up at work," the November election was approaching,[2] and she made a decision to try and negotiate a settlement. On October 15, 2004, Tyler wrote a letter (Claimant's Exhibit 1A) to Attorney Carlton G. Salmons, who was representing the County and the Sheriff regarding these claims. Tyler reviewed the facts and the law and made a demand for nearly $500,000.00. On October 21, 2004, Tyler wrote Salmons again (Claimant's Exhibit 1B) and complained regarding the "surreptitious search" of Reed's desk and office.

On October 22, 2004, Mr. Salmons responded to Tyler (Claimant's Exhibit 1C), indicating that the lock would be changed on Reed's office, with Reed holding the only key. By this time, Reed's supervisor had been changed twice and she was reporting to Deputy Sheriff Jason Johnson.

During the following week, Tyler and Salmons negotiated an agreement, whereby Reed would be placed on administrative leave during the pendency of the anticipated forthcoming litigation. Tyler signed a Stipulation (Claimant's Exhibit 2) on Reed's behalf during the early evening of October 28, 2004. The agreement provided that Reed would receive full pay and full benefits, including annual increases in cost of living, during the pendency of any litigation in state or federal court. In addition, Reed was entitled to three paid personal leave days per year and a payment for two weeks vacation.

Reed testified that she received a call from Tyler regarding the proposed settlement during the evening of October 28, 2004. Reed told Tyler that she wanted to "make sure I don't lose anything," such as vacation, sick leave, or IPERS benefits. Tyler said she would check on those issues and would call her back. Tyler called back ten minutes later and said that vacation had been added. It was apparently at that time that the hand-written paragraph 6 was added to the Stipulation. There was no discussion regarding payment of attorney fees during the two phone conversations on the evening of October 28, 2004. Tyler instructed Reed to come to the office the next day in order to "sign the papers."

---

[2] Apparently, Sheriff Hannes was running for re-election.

4

Reed testified that she went to Tyler's office on October 29, 2004, expecting to sign the administrative leave agreement which had been negotiated with the County. Instead, Tyler presented Reed with a new fee agreement (Plaintiff's Exhibit B) which provided that Tyler would receive 25% of Reed's gross earnings while on administrative leave. Reed was paid $1,529.43 every two weeks and Tyler was to receive $382.36. At Tyler's direction, Reed wrote "This is agreeable" and signed the document. Tyler then added a note, stating "It was unexpected that the Defendants would agree to full pay off work as part of the case within one and one half day of discussion on October 27 and 28, 2004." Reed then signed again.

While the record is somewhat imprecise, Tyler apparently asked the County to deduct the attorney fees from Reed's pay and send the attorney fee portion directly to Tyler. The County refused. On November 1, 2004, Reed returned to Tyler's office and the deduction for attorney fees was reduced to 20.5%, or $313.53 every two weeks. (*See* Claimant's Exhibit 3 and Plaintiff's Exhibit A). According to Reed, she understood the additional deduction was intended to represent the fact that since the County was not withholding the attorney fees from her wages, the attorney fees were being paid "after taxes." Tyler testified that the agreement was intended to represent payment on Reed's "net income," but the record is unclear how the 20.5% figure was determined.

Reed paid pursuant to the November 1, 2004, agreement for ten weeks, or $1,567.65. She discontinued payments at that time and filed a complaint with the Fee Dispute Committee of the Scott County Bar Association. The issue was not resolved, however, and Reed subsequently filed a Complaint with the Iowa Supreme Court, claiming an ethics violation. (*See* Claimant's Exhibit 4.) Tyler testified that the Complaint was subsequently dismissed.

At the time of hearing, Tyler introduced a calculation (Claimant's Exhibit 6) regarding the amount which would be due pursuant to the November 1, 2004, Agreement,

5

totaling $16,773.84. In addition, Tyler claims $5,261.00 pursuant to the original attorney fee contract executed on July 21, 2004, for services rendered prior to her termination.[3]

## V. CONCLUSIONS OF LAW

Tyler's claim for attorney fees is in two parts. First, she claims entitlement to $5,261.00 for the fair and reasonable value of services rendered on Reed's behalf prior to Tyler's termination as counsel. Second, Tyler claims entitlement to $16,773.86, representing 20.5% of gross wages received by Reed while on administrative leave.

### A. *Payment for Services Performed.*

When Tyler initially agreed to undertake the representation of Reed in her claims against the County and its Sheriff, the parties executed an Attorney Fee Contract (Exhibit 1). Reed concedes that she entered into that Agreement voluntarily. The Contract provided, in part, as follows:

> FEE ON TERMINATION. If client terminates Attorney's employment before the conclusion of the case, Client shall pay Attorney a fee based on the fair and reasonable value of services performed by the Attorney before termination.

*See* Exhibit 1 at 2.

Tyler did not submit an itemization of her services as an exhibit at the instant Hearing. A copy of an invoice was submitted by Tyler, however, in conjunction with an attempt to resolve the fee dispute by the Fee Dispute Committee of the Scott County Bar Association. (*See* Claimant's Exhibit 4.) The itemization reflects 26.45 hours of services rendered and a charge of $5,240.00.[4] In addition, Tyler identified $21.00 for "copies of

---

[3] The calculation set forth on Exhibit 6 is 2¢ less than the amount claimed on the Third Amended Notice of Attorney Lien (docket number 98).

[4] By the Court's calculation, that amounts to approximately $198.11 per hour. At $200.00 per hour, the amount charged reflects 26.2 hours. Accordingly, it would appear that Tyler did not charge for .25 hours, although the record is silent regarding whether that adjustment was intentional. In addition, the Court notes that the one hour charged on December 17, 2004, would appear to be related to the dispute regarding the attorney fee,
(continued...)

6

tapes," resulting in a total bill of $5,261.00. The itemization does not include a review of Mr. Salmons' letter of October 22, 2004, nor does it include negotiations which occurred on October 27-28, regarding the administrative leave.

Reed does not dispute the itemization of time claimed by Tyler prior to Tyler's termination, nor does she contest the reasonableness of the $200.00 per hour fee. That is, Reed does not object to that portion of Tyler's claim which is based on the fair and reasonable value of services performed by Tyler before her termination. In fact, Reed suggested at the time of hearing that Tyler is entitled to be compensated on an hourly basis for the work performed on October 27-28, in conjunction with negotiating the terms of Reed's administrative leave.

### B. Contingent Fee.

The fighting issue in this case is whether Tyler is entitled to a contingent fee on the salary paid to Reed while on administrative leave. Tyler argues that if Reed had been forced to quit due to extremely stressful working conditions, then it would have been necessary to prove "constructive discharge" at the time of trial in order to recover back pay. Under those circumstances, Tyler would have received 40% of any recovery. Reed responds, however, that if she had known Tyler would claim a portion of her pay, she would *not* have quit her employment prior to any trial and, therefore, Tyler would have received nothing for that period of time.

The Attorney Fee Contract (Claimant's Exhibit 1) executed by Reed and Tyler on July 21, 2004, provided generally that Tyler would receive 40% of the "recovery" or "any settlement," including settlement of attorney fees.[5] The Agreement does not define "recovery," nor does it define "settlement." Reed argues that her continued receipt of

---

[4] (...continued)
rather than work performed by Tyler on Reed's claim.

[5] The terms "recovery" and "settlement" would appear to be used interchangeably in the "contigent [sic] fee" portion of the Agreement.

7

wages does not constitute a recovery or settlement, even if she was not required to work pursuant to the stipulation for administrative leave. Tyler argues, on the other hand, that since Reed was entitled to payment without being required to work in a hostile work environment, the wages represent a recovery or settlement within the meaning of the fee contract.

Generally, contracts are interpreted based on the language within the four corners of the document. *Clinton Physical Therapy Services v. John Deere Health Care*, 714 N.W.2d 603, 615 (Iowa 2006). If the contract is not ambiguous, then the Court must simply interpret it as written. *Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005). However, when the language of the agreement is ambiguous, then the Court must engage in a process of interpretation to search for the meanings attached by each party at the time the contract was made. *Clinton Physical Therapy Services*, 714 N.W.2d at 615.

The Court finds that the terms "recovery" and "settlement" are ambiguous under the circumstances presented here. The parties did not discuss whether wages continuing during an administrative leave would be considered a "recovery" or "settlement" for purposes of exacting an attorney fee, and the Court concludes that it is not clear from the four corners of the document.

The Court is not required to interpret the contract in this case, however, because the agreement was subsequently modified. On October 29, 2004, Reed and Tyler signed a document (Plaintiff's Exhibit B) which provided that Tyler would receive 25% of Reed's gross pay. Three days later, on November 1, 2004, Reed and Tyler signed a two-page document (Claimant's Exhibit 3), indicating that Tyler would receive 20.5% of Reed's gross pay, or $313.53 every two weeks. Claimant's Exhibit 3 further states that Tyler would not receive any additional attorney fee relating to "back pay," but that the "original fee contract is still controlling with regard to all other monies paid in regard to this matter, entered into 7-21-04." Accordingly, it would appear that any ambiguity which

existed in the original agreement signed on July 21, 2004, was clarified by the subsequent agreements signed on October 29, 2004, and November 1, 2004.

Reed seeks to avoid the terms of the November 1, 2004, agreement, however, by arguing that the contract was entered into under duress. In support of her argument, Reed cites *Lawrence v. Tschirgi*, 57 N.W.2d 46 (Iowa 1953) (cited with approval in *Committee on Professional Ethics v. Chipokas*, 493 N.W.2d 414, 417 (Iowa 1993)). In *Lawrence*, the Iowa Supreme Court invalidated a contingent fee contract which was executed after an attorney-relationship had already been established. The court indicated that such contracts are subject to special scrutiny.

> Where such contracts made during the existence of the attorney-client relationship are not regarded as void they are viewed with suspicion and closely scrutinized by the courts, as are all dealings between trustee and cestui. There is a presumption of unfairness or invalidity attaching to a contract for compensation made after the relationship has been established and the burden is on the attorney to show it was fairly and openly made, that the client was fully informed concerning it and understood its effect.

*Id.* at 48. The Court noted that the client "received no independent advice before the fee contract," such as would have been provided by a disinterested attorney. *Id.* at 50.

Applying the close scrutiny required by *Lawrence*, and placing the burden on Tyler to overcome the presumption of unfairness and invalidity, in order to establish that the agreement "was fairly and openly made," the Court concludes that the October 29, 2004, modification is unenforceable. Reed credibly testified at the instant Hearing that she was advised telephonically by Tyler regarding the terms of the settlement during the evening of October 27, 2004. Tyler instructed Reed to come to her office the next day to "sign the papers." Tyler knew that evening that she had already signed the Stipulation for administrative leave on Reed's behalf, and the only "papers" remaining to be signed was the modification of the attorney fee agreement. Nonetheless, Tyler did not raise the issue of a contingent fee claim on Reed's continued wages until the following day.

9

The enforceability of the second modification, executed on November 1, 2004, is a closer question. By that time, Reed clearly understood that the issue to be addressed was Tyler's claimed entitlement to a portion of her continuing wages. Reed had three days in which to seek independent counsel's advice, if she chose to do so. After considering all of the facts and circumstances, however, including Tyler's failure to discuss the issue of attorney fees with Reed prior to entering into the stipulation for administrative leave on her behalf, the Court concludes the agreement signed on November 1, 2004, fails to overcome the presumption of invalidity in *Lawrence*.

Even though the Court has concluded that the modified agreement executed on November 1, 2004, is unenforceable, Tyler nonetheless performed a valuable service for Reed by negotiating the stipulation for administrative leave. Reed was able to collect full wages and benefits for more than two years while the litigation was pending, without having to report to a hostile work environment. Reed suggests that Tyler be paid on an hourly basis for the work performed on October 27-28, pursuant to the original Attorney Fee Contract (Claimant's Exhibit 1) executed on July 21, 2004, and the analysis found in Part V(A) above. The Court believes, however, that neither party anticipated the circumstance where Reed would receive full pay and benefits while on administrative leave and, therefore, the original Attorney Fee Contract does not govern the circumstances presented here. Accordingly, the Court concludes that Tyler is entitled to a reasonable fee on a *quantum meruit* basis. *Wunschel Law Firm v. Clabaugh*, 291 N.W.2d 331, 337 (Iowa 1980).

The term "*quantum meruit*" literally means "as much as he deserved." *Iowa Waste Systems, Inc. v. Buchanan County*, 617 N.W.2d 23, 28 (Iowa App. 2000). In modern contract law, the antiquated term *quantum meruit* "is actually used to denote a particular subclass of implied-in-fact contracts: An implied-in-fact contract to pay for services rendered." *Id.* at 29. One may recover under a claim of *quantum meruit* for the reasonable value of the services provided. *Id.*

The final issue before the Court is whether the value of the services provided by Tyler in negotiating the stipulation for administrative leave is reflected by her hourly rate, or whether she is entitled to something more, reflecting the value of the benefits received by Reed pursuant to the stipulation. In determining the "reasonable value" of attorney services, most courts start with the "lodestar figure," which is the number of hours reasonably expended on the matter multiplied by a reasonable hourly rate. 23 *Williston on Contracts* § 62:8 (4th Ed.). Beyond the lodestar figure, however, other factors have been cited as determinants of the reasonable value of services, including "the beneficial effects which accrue to the client as a result of the attorney's labors." *Id.*

While Reed now claims that she would have continued to work in a hostile work environment in order to avoid paying Tyler an attorney fee in this regard, the Court concludes that Reed received a substantial benefit by continuing to receive her full pay and benefits, while not being required to work in an environment where she was being ostracized, her management decisions were being undermined, and her personal space was being surreptitiously searched.

As Tyler notes, Reed essentially received all of the benefits of "back pay" without the necessity of proving constructive discharge at trial and without the need to mitigate her damages by seeking other employment. Under these circumstances, the Court concludes that the reasonable value of Tyler's services in negotiating the stipulation for administrative leave exceeds the amount determined by simply multiplying the number of hours expended times her normal hourly rate.

There is no formula for determining what constitutes the "reasonable value" of attorney services. Rather, a determination in that regard rests within the sound discretion of the Court. *Ace Concrete Co. v. Metro Waste Authority*, 713 N.W.2d 247 (Table), 2006 WL 228925 (Iowa App.). After considering all of the facts and circumstances, including the actual number of hours expended by Tyler to negotiate the stipulation for administrative leave and the value to Reed of receiving full pay and benefits without the

11

necessity of reporting to work in a hostile work environment, the Court concludes that the reasonable value of attorney services associated with the stipulation for administrative leave is $5,000.00.

### C. Summary of Fees

As set forth in Part V(A) above, Tyler is entitled to $5,111.00 for services rendered on Reed's behalf, not including services associated with negotiating the Stipulation for Administrative Leave.[6] As set forth in Part V(B), the Court has concluded that Tyler is entitled to $5,000.00 for negotiating the Stipulation for Administrative Leave. Accordingly, the total fee earned by Tyler is $10,111.00. Tyler has already received $1,567.65, leaving a balance due of $8,543.35. Payment will be made from the amount previously deposited for that purpose with the Clerk of Court. The balance of $13,491.51 will be returned to Reed.

### VI. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Clerk of Court is hereby authorized and directed to pay Eight Thousand Five Hundred Forty-Three Dollars thirty-five cents ($8,543.35) to Claimant M. Leanne Tyler.

2. The Clerk of Court is hereby authorized and directed to pay Thirteen Thousand Four Hundred Ninety-One Dollars fifty-one cents ($13,491.51) (the balance of the amount deposited), to Plaintiff Pamela R. Reed.

DATED this 7th day of May, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA

---

[6] The Court subtracted one hour charged on December 17, 2004, related to the attorney fee dispute, multiplied the remaining hours (25.45) times $200 per hour, and added $21.00 in expenses.

12